## UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH

| | |
|---|---|
| NATHAN DAVIS,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE INC.,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [19] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING [38] PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:24-cv-00149-DBB-DBP<br><br>District Judge David Barlow |

Before the court are the parties' cross-motions for summary judgment.[1] Defendant United Parcel Service Inc. ("UPS") moves for summary judgment on both of Plaintiff Nathan Davis's claims. Mr. Davis responded to UPS's motion and filed an untimely cross-motion for partial summary judgment. Having considered the briefing, the court finds that oral argument is unnecessary.[2] For the reasons below, the court grants UPS's motion and denies Mr. Davis's motion.

## BACKGROUND

Mr. Davis has been an employee of UPS since 2006.[3] In approximately 2011, Mr. Davis became a package car driver ("driver").[4] Because UPS operates in interstate commerce, its drivers must not only be able to legally operate a motor vehicle, but also meet federal

---

[1] Def. Mot. for Summ. J. ("Def. MSJ"), ECF No. 19, filed July 30, 2025; Pl. Mot. for Partial Summ. J. ("Pl. MSJ"), ECF No. 38, filed Sept. 22, 2025.
[2] *See* DUCivR 7-1(g).
[3] Def. MSJ ¶ 2; Pl. MSJ ¶ 1.
[4] Def. MSJ ¶ 2; Pl. MSJ ¶ 1.

requirements, including regulations promulgated by the Federal Motor Carrier Safety

Administration ("FMCSA").[5] One such regulation is that an interstate commerce driver must

obtain a United States Department of Transportation ("DOT") medical examiner's certificate

("MEC") by passing a DOT medical examination by an authorized medical examiner.[6] Pursuant

to the collective bargaining agreement ("CBA") that governs the employment of UPS's

employees, UPS reserves the right to select the medical examiners who issue the drivers' DOT

physicals and MECs.[7]

On May 3, 2019, Mr. Davis was at a store with his wife during non-working hours when

he had a single non-epileptic seizure.[8] As a result, Mr. Davis was removed from driving duties.[9]

Over the next few weeks, Mr. Davis took paid time off from work until approximately June 3,

2019, when his doctor, Dr. Christopher Reynolds, released him to work in a non-driving

capacity.[10] Dr. Reynolds ordered Mr. Davis not to drive for the next three months.[11]

Three months later, UPS sent Mr. Davis to Dr. Michael Hardy, a UPS-authorized medical

provider.[12] Dr. Hardy issued Mr. Davis a conditional DOT Medical Certificate that would allow

him to drive when he received a Utah K-waiver/exemption.[13] However, a K-waiver applies only

---

[5] Def. MSJ ¶ 3; Pl. MSJ ¶ 2.
[6] Def. MSJ ¶ 3.
[7] *Id.* ¶ 10.
[8] Def. MSJ ¶ 16; Pl. MSJ ¶ 4.
[9] Def. MSJ ¶ 16; Pl. MSJ ¶ 4.
[10] Def. MSJ ¶ 17; Pl. MSJ 11.
[11] Def. MSJ ¶ 19.
[12] *Id.* ¶ 21.
[13] *Id. See also Commercial Driver License (CDL) Medical Examiner's Certificate (MEC or DOT Card) / Medical Info. / Intrastate Waiver Program*, Utah Dep't of Public Safety Driver License Division, https://dld.utah.gov/cdl-dot-medical-intrastate/ [https://perma.cc/7BD5-QEUW] (describing how Utah allows "drivers with impairments of functional ability" to participate in an "intrastate waiver program").

to intrastate driving, so it would not help Mr. Davis become reinstated as a UPS driver.[14]

Dr. Hardy realized this mistake within a few days and notified Mr. Davis that the MEC would

not allow him to drive for UPS.[15]

Mr. Davis's manager directed him to Concentra, a UPS-approved clinic where he was

examined by Dr. VanShaar, who was a UPS-authorized medical provider at that time.[16] The

FMCSA Medical Examiner Handbook in effect at the time offered the following guideline about

seizures, generally:

> If an individual has had a sudden episode of a **nonepileptic seizure or loss of
> consciousness of unknown cause which did not require antiseizure
> medication**, the decision as to whether that person's condition will likely cause
> loss of consciousness or loss of ability to control a motor vehicle is made on an
> individual basis by the medical examiner in consultation with the treating
> physician. Before certification is considered, it is suggested that a 6 month
> waiting period elapse from the time of the episode. Following the waiting period,
> it is suggested that the individual have a complete neurological examination. If
> the results of the examination are negative and antiseizure medication is not
> required, then the driver may be qualified.[17]

The handbook also provided the following guideline about drivers who have had a "single

unprovoked seizure":

> While individuals who experience a single unprovoked seizure do not have a
> diagnosis of epilepsy, they are clearly at a higher risk of having further seizures.
> The overall rate occurrence is within the first 5 years following the seizure.
> . . . .
> The driver should be seizure free and off anticonvulsant medication for at least 5
> years for an initial unprovoked seizure.[18]

---

[14] Def. MSJ ¶ 22.
[15] *Id.* ¶ 23.
[16] Davis Depo. 29:23–30:3; Brown Depo. 32:2–24.
[17] Davis Depo., Ex. 4 at 47 (emphasis in original).
[18] *Id.*, Ex. 4 at 48.

However, Dr. VanShaar did not follow the FMCSA's five-year waiting period and issued Mr. Davis a one-year DOT MEC on January 24, 2020.[19] UPS did not accept the MEC based on the failure to follow the FMCSA guidance and Dr. Hardy's previous rejection of Mr. Davis for an interstate DOT MEC.[20]

On February 21, 2020, just one month later, Mr. Davis obtained another DOT MEC from Dr. VanShaar and UPS accepted it, returning Mr. Davis to his driving duties.[21] One year later, in February 2021, the MEC expired and Mr. Davis returned to Concentra to renew it.[22] UPS-approved provider Melanie Kammerman, PA examined Mr. Davis and, after conferring with the FMCSA Medical Review Board's Dr. Puricelli, denied Mr. Davis another DOT MEC because the five-year waiting period had not passed.[23] Consequently, UPS placed Mr. Davis in a non-driving, "inside position" with the same pay rate because he did not qualify as a driver without a DOT MEC.[24] Two days later, Mr. Davis sought out Dr. VanShaar and obtained a DOT MEC from him.[25] However, Dr. VanShaar was no longer a UPS-approved medical provider, so UPS rejected the MEC.[26]

On August 31, 2021, Mr. Davis filed his ADA claim of discrimination with the Utah Labor Commission.[27]

---

[19] *Id.* 30:15–31:4, Ex. 3.
[20] *Id.* 22:25–24:9, 31:1–32:9; Brown Depo. 16:25–17:14.
[21] *Id.* 39:21–40:14, Ex. 5.
[22] *Id.* 41:18–42:10.
[23] Melanie Kammerman Depo. ("Kammerman Depo") 22:1–26:8, ECF No. 19-7, filed July 30, 2025.
[24] Davis Depo. 50:4–51:10, 54:5–55:4.
[25] *Id.* 45:3–47:1, Ex. 7.
[26] *Id.* 47:12–24.
[27] *Id.* 55:22–56:7, Ex. 9.

In April 2022, Mr. Davis resumed driving for UPS when he obtained a DOT MEC from a UPS-approved medical provider at WorkMed, another UPS-approved clinic.[28]

On February 28, 2024, Mr. Davis filed his Complaint.[29]

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[31] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[32]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[33]

## DISCUSSION

Before analyzing the two claims in the parties' motions, the court addresses the preliminary issue of whether to consider Mr. Davis's untimely motion for partial summary judgment.[34] Rule 16(b) of the Federal Rules of Civil Procedure requires the issuance of a scheduling order, which sets forth the parties' deadlines for pleadings, discovery, and dispositive motions.[35] Here, the court's scheduling order required the parties to file dispositive motions no

---

[28] Davis Depo. 54:5–55:4, Ex. 8; Brown Depo. 39:23–40:20.
[29] Compl., ECF No. 2, filed Feb. 28, 2024.
[30] Fed. R. Civ. P. 56(a).
[31] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).
[32] *Id.*
[33] *Id.* at 670–71.
[34] ECF No. 38.
[35] *See* Fed. R. Civ. P. 16(b).

later than July 30, 2025 yet Mr. Davis did not file his motion for summary judgment until

September 22, 2025—nearly two months after the applicable deadline.[36]

Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that a scheduling order

"may be modified only for good cause and with the judge's consent."[37] Yet Mr. Davis did not

seek leave from the court to file his untimely motion, nor has he argued good cause for his late

filing. Instead, he simply disregarded the scheduling order and filed the motion out of time,

which violates the court's scheduling order and does not comply with Rule 16. Granted,

"'[d]istrict courts enjoy broad discretion to manage' their dockets and to consider motions that

are not timely filed under their scheduling orders."[38] However, "the interest[s] of judicial

economy are best served by upholding the clear and unequivocal deadlines contained in the

Federal Rules."[39] To this end, "a scheduling order is an important tool necessary for the orderly

preparation of a case for trial."[40]

Therefore, because Mr. Davis's motion for partial summary judgment is not properly

before the court, the motion is denied and the court declines to consider it on the merits.

---

[36] *See* Scheduling Order 2, ECF No. 13, filed Aug. 21, 2024; ECF No. 38.
[37] Fed. R. Civ. P. 16(b)(4).
[38] *Gardner v. Deseret Mut. Benefit Adm'rs*, No. 2:14-cv-00602, 2016 WL 1595359, at *1 (D. Utah Apr. 20, 2016) (quoting *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x 86, 104 (10th Cir. 2012)).
[39] *Hakes v. Centennial Bank, Inc.*, No. 2:11-cv-1, 2011 WL 2014862, at *1 (D. Utah May 23, 2011). *See also McKeen v. USAA Cas. Ins. Co.*, No. 2:14-cv-00396, 2016 WL 1122873, at *2 n.12 (D. Utah Mar. 22, 2016) ("To the extent the Motion purports to be a motion for summary judgment, it is rejected as untimely. The dispositive motions deadline is past.").
[40] *Lester v. Conoco Phillips*, No. 4:18-cv-00022, 2019 WL 6615506, at *2 (D. Utah Dec. 5, 2019) (quotation marks and citation omitted).

I.     **UPS Is Entitled to Summary Judgment as a Matter of Law.**

UPS seeks summary judgment on the basis that the FMLA claim is barred by the statute

of limitations and that the ADA claim does not establish discrimination.[41] The court addresses

each argument in turn.

A.     **The FMLA claim is barred by the statute of limitations.**

An FMLA claim must "be brought under this section not later than 2 years after the date

of the last event constituting the alleged violation for which the action is brought."[42] If the case

involves a "willful violation," then the limitation period is extended by one year.[43] The FMLA

does not define "willful," but "the Supreme Court has stated that the word 'is generally

understood to refer to conduct that is not merely negligent.'"[44] Thus, a willful violation requires

a plaintiff to show "that the employer either knew or showed reckless disregard for the matter of

whether its conduct was prohibited by the statute."[45]

UPS asserts there is no evidence of a willful violation but argues that even should the

three-year period apply, no events prior to February 28, 2021 could be considered for an FMLA

claim because Mr. Davis filed his complaint on February 28, 2024.[46] In response, Mr. Davis

---

[41] UPS also argues that the FMLA claim fails on the merits. Because the court resolves the claim on the limitations basis, however, it does not reach the merits. *See, e.g.*, *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1076 n.12 (10th Cir. 2007) ("Because we decide the case on alternative grounds, we need not address the parties' arguments regarding Defendants' sovereign immunity.").

[42] 29 U.S.C. § 2617(c)(1).

[43] *Id.* § 2617(c)(2).

[44] *Packard v. Continental Airlines, Inc.*, 24 Fed. App'x 960, 961 (10th Cir. 2001) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

[45] *McLaughlin*, 486 U.S. at 133.

[46] Def. MSJ 12.

argues UPS's conduct amounted to a "willful violation" yet fails to explain why the claim is not time-barred.[47]

The court need not decide whether the two-year or three-year statute of limitations applies here because under either one, Mr. Davis's "case was filed beyond the controlling date."[48] Mr. Davis was removed from driving duties from May 2019 until February 2020, and again from February 2021 until April 2022.[49] Mr. Davis never applied for FMLA leave during either period but took paid leave in 2019.[50] The FMLA entitles employees returning from FMLA leave to be "restored by the employer to the position of employment held by the employee when the leave commenced;" or "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[51] Thus, Mr. Davis's reinstatement as a driver in February 2020, when he obtained a DOT certificate from a UPS-approved provider, marks the end of his FMLA claim.[52] Even if the court were to consider the subsequent alleged violation of removing Mr. Davis from driving duties again on February 17, 2021, that too falls outside the three-year statute of limitations.[53]

In sum, Mr. Davis's FMLA claim was filed beyond either statute of limitations. Therefore, this claim is barred and fails as a matter of law.

---

[47] Pl.'s Response to Def.'s Mot. for Summ. J. ("Response") 15–17, ECF No. 39, filed Sept. 22, 2025.
[48] *Packard*, 24 Fed. App'x at 962.
[49] Def. MSJ 13, Response 17.
[50] Nathan Davis Depo. ("Davis Depo") 48–49, ECF No. 19-3, filed July 30, 2025.
[51] 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214.
[52] Def. Reply in Support of Mot. for Summ. J. ("Reply") 15, ECF No. 43, filed Oct. 6, 2025; Response 14.
[53] *See* Nathan Davis Decl. ("Davis Decl") ¶ 20, ECF 33, filed Sept. 22, 2025; Reply 15; Gayle Brown Depo. ("Brown Depo") 36–37, ECF No. 19-4, filed July 30, 2025.

### B.    The ADA claim fails for lack of a prima facie case of discrimination.

ADA claims must be filed within 300 days of the alleged discrimination.[54] Because Mr. Davis filed his discrimination claim on August 31, 2021, any events prior to November 4, 2020 are barred from consideration on this claim.[55] Thus, the scope of Mr. Davis's ADA claim is limited to his removal from driving duties in February 2021 until April 2022.[56]

Mr. Davis seeks relief under the ADA on the theory that he has been "regarded as" disabled by UPS when it removed him from driving duties in February 2021 up until April 2022.[57] To succeed on a claim of discrimination under the ADA, a plaintiff may produce direct evidence of discrimination or utilize a burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).[58]

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."[59] Direct evidence may include "oral or written statements on the part of a defendant showing discriminatory motivation."[60] Mr. Davis does not point to any direct evidence of discrimination or apply the *McDonnell Douglas* burden-shifting framework.[61] Instead, Mr. Davis asserts policy arguments as to why UPS should not be allowed to designate which medical providers may evaluate its employees' medical fitness for workplace duties.[62] "A

---

[54] *See* 42 U.S.C. § 2000e-5(e)(1) (300-day deadline for filing Title VII charges); *Saini v. Hosp. Care Consultants*, No. 24-2162, 2025 WL 3012832, at *2 (10th Cir. 2025).
[55] Def. MSJ 13; Response 17.
[56] Def. MSJ 13; Response 17.
[57] Response 17; *see also Adair v. City of Muskogee*, 823 F.3d 1297, 1305–06 (10th Cir. 2016) (detailing the historical development of "regarded as" claims under the ADA).
[58] *See Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018).
[59] *McElroy v. Am. Fam. Ins. Co.*, 51 F. Supp. 3d 1093, 1109 (D. Utah Sept. 30, 2014) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007)).
[60] *Hall*, 476 F.3d at 854 (quoting *Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000)).
[61] Response 17–20.
[62] *Id.*

statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence."[63] Thus, even were the court to consider UPS's CBA provisions as "written statements" that allegedly show discriminatory purpose, the provisions would not amount to direct evidence of discrimination because they can be interpreted as reasonable requirements to ensure the safety of UPS's employees and the public.

When "a plaintiff does not present direct evidence of intentional discrimination but instead relies on circumstantial evidence, courts apply the *McDonnell Douglas* burden shifting framework."[64] Under the three-step framework, a plaintiff must establish a prima facie case of discrimination by making three showings.[65] First, "that he is disabled within the meaning of the ADA;" second, "that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired;" and third, "that he was discriminated against because of his disability."[66] "If [a] plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." Then, if the defendant "articulates a nondiscriminatory reason, the burden shifts back to [the] plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual."[67]

---

[63] *Hall*, 476 F.3d at 854 (quoting *Patten v. Wal-Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir. 2002)).
[64] *McElroy*, 51 F. Supp. 3d at 1104 (internal quotation marks and citation omitted).
[65] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–803 (1973).
[66] *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1218–19 (10th Cir. 2016) (internal quotation marks and citation omitted).
[67] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (citing *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 179–80 (10th Cir. 1999)).

Mr. Davis cannot make a prima facie case of discrimination because he cannot show that "he [was] qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired."[68]

One of the "essential functions" of a UPS driver is to pass the federal requirements for interstate commerce driving, including obtaining a DOT medical certificate.[69] Mr. Davis's DOT medical certificate expired in February 2021.[70] When he tried to obtain a new one from a UPS-approved medical provider, he was denied because the provider, after conferring with the medical director who is also on the FMCSA medical review board, followed the general FMCSA's five-year waiting period after a seizure.[71] No reasonable accommodation could remedy the fact that Mr. Davis did not qualify to be an interstate commerce driver at that time. Although Mr. Davis argues that UPS should have accepted a MEC from a non-approved medical provider, he admitted that the collective bargaining agreement allowed UPS to designate the provider.[72] Moreover, the Tenth Circuit has consistently held that "the duty to accommodate does not require the employer to take steps inconsistent with a valid CBA [collective bargaining agreement]."[73]

---

[68] *Kilcrease*, 828 F.3d at 1218.

[69] *See* Davis Depo. 28:1–22, 51:11–14; Brown Depo. 20:10–22:10.

[70] Def. MSJ 19; Response 7.

[71] Def. MSJ 19; Melanie Kammerman Depo. ("Kammerman Depo") 16:21–17:1; 22:6–8, ECF No. 19-7, filed July 30, 2025.

[72] ECF No. 21-3, 3.

[73] *Graff v. Henderson*, 30 Fed. App'x 809, 811 (10th Cir. 2002); *TransWorld Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977). *See also Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1197 (10th Cir. 2023) (stating that an accommodation that requires an employer "to violate the collective bargaining agreement" is not reasonable); *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1271 n.5 (10th Cir. 1998) (stating that an employee's request for a transfer was not reasonable because "it would have violated the seniority provisions of the collective bargaining agreement").

Because Mr. Davis has not established the second prima facie element of discrimination, his ADA claim fails.

## ORDER

Accordingly, UPS's motion for summary judgment is GRANTED[74] and Mr. Davis's motion for partial summary judgment is DENIED.[75]

Signed January 23, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[74] ECF No. 19.
[75] ECF No. 38.